## No. 13,628.

BIRDSALL, MAYOR ET AL *v.* SANDERS ET AL.

(42 P. [2d] 194)

Decided January 28, 1935. Rehearing denied March 11, 1935.

Mr. BEN S. WENDELKEN, for plaintiffs in error.

Mr. THOMAS I. PURCELL, Messrs. ALTER & UPTON, for defendants in error.

*En Banc.*

MR. JUSTICE BOUCK delivered the opinion of the court.

The mayor, the city council, and the city manager of Colorado Springs have brought here for review a writ of mandamus whereby the district court commanded them to reinstate the three defendants in error as patrolmen on the police force of the city.

These men were in the classified service, having passed the prescribed civil service examination and received their appointments in due compliance with the charter and ordinances of the city and with the rules of its civil service commission.

On January 24, 1934, the city manager assumed to discharge the three men. He acted under a resolution of the city council, adopted about two months before, which provides as follows:

"The City Manager is hereby authorized to prescribe efficiency tests for all members of the Police Department. Such members to be rated and classified according to the results of such tests.

"Any reduction in the membership of such Police Department shall thereafter be made from those who shall be rated in the lowest classification on the basis of such efficiency tests."

The tests, ratings and classifications employed by the manager resulted in placing these men at the bottom of the patrolman list. Therefore, when a shortage in the appropriations seemed to call for a reduction of the police force, they were the ones dismissed, while others whose appointments came later in point of time were retained.

So far as here applicable, section 24 of the home-rule charter adopted by the city of Colorado Springs, under the authority conferred by article XX of the state Constitution, says:

"Subject to the direction and supervision of the city council, the powers and duties of the city manager shall be * * *, except as herein provided, to appoint, suspend and remove all heads of departments and all other employes of the city; all appointments to be upon merit and fitness alone, and, in the classified service, all

appointments and removals to be subject to the civil service provisions of the charter."

Section 149 of the charter declares: "The [civil service] commission shall, with the approval of the council, make such rules and regulations for the proper conduct of its business, as it shall find necessary or expedient. The commission shall, among other things, provide for the classification of all employments in the department of public safety * * * for open, competitive and free examinations as to fitness; for an eligible list from which vacancies shall be filled; for a period of probation before employment is made permanent; and for promotion on the basis of merit, experience and record."

In the lawful exercise of a power conferred upon the city council by section 150 of the charter, an ordinance was passed by the terms of which "promotions, transfers, suspension, reinstatements, and dismissals without fault or delinquency, of employes in the Classified Service, shall be appropriately provided for in the Rules hereunder."

The only rule of the civil service commission on the subject of "dismissals without fault or delinquency" appears to be sub-paragraph 2 of its rule IX. This deals altogether with certain rights—on the part of those suffering such dismissals—relative to reinstatements and appointments in case vacancies are to be filled. It does not state the conditions under which such dismissals may be accomplished.

██ The above quoted provisions show that any classification affecting the relative position of persons in the classified service must be made by the civil service commission itself. Only that body can, under those provisions, properly determine the order in which such dismissals as those here involved shall ensue. The city council and the manager cannot justify their acts on the grounds of effecting muncipal economy or of promoting efficiency in the police department. To do so would be to endanger the whole civil service structure which the

framers of the charter have erected with the obvious purpose of giving security of tenure to those who have been tested and found to be competent servants of the city, subject to orderly changes by definite rules of the commission. If such employes "without fault or delinquency" are to be dismissed otherwise than in the inverse order of appointment, those rules must declare the conditions of such deviation by a proper classification under the pertinent provisions of the charter and ordinances of the city.

The contentions against dismissal were partly based upon an alleged interest of the discharged patrolmen in the "police department relief fund," to which they had regularly contributed by the city's deducting for said fund one per cent of their salaries pursuant to the ordinances establishing and governing that fund. It is earnestly insisted that on account of this alleged interest in the fund the discharge results in their being unconstitutionally deprived of property without due process of law. However, according to the view which the trial court took and which we share, it is unnecessary to consider this issue.

Judgment affirmed.

MR. JUSTICE CAMPBELL and MR. JUSTICE YOUNG not participating.